UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ELSTER JOSEPH PONTHIEUX**                                                  **PLAINTIFF**

**v.**                                                                                           **No. 4:05CV113-M-D**

**GEORGE BENFORD**
**JOHN BEARRY**                                                                           **DEFENDANTS**

### MEMORANDUM OPINION

This matter comes before the court on the motion by the defendants for summary judgment in this *pro se* prisoner case filed under 42 U.S.C. § 1983. The Magistrate Judge has issued a Report and Recommendation, and the defendants have objected to it. The matter is ripe for resolution. For the reasons set forth below, the court shall approve and adopt the Report and Recommendation as the opinion of the court.

The plaintiff alleges that he requested treatment for an excruciating toothache on September 14, 2004. A nurse made repeated telephone calls on the plaintiff's behalf in an attempt to arrange treatment for the plaintiff. Someone in defendant Dr. Benford's office told the nurse that Dr. Benford refused to treat the plaintiff. The medical clinic refused to provide pain medication to the plaintiff in the interim. The nurse phoned the clinic on October 1, 2004, and again on October 5, 2004, seeking treatment for Ponthieux's extreme tooth pain. The medical clinic staff refused to provide treatment for the plaintiff. At that point, the nurse told the plaintiff that she could not do anything further. Becoming increasingly desperate, the plaintiff asked the nurse to contact Dr. Bearry on October 11, 2004. The nurse told the plaintiff that Dr. Bearry, after hearing about the plaintiff's predicament, refused to take action; Dr. Bearry said that Dr. Benford could not treat the plaintiff because he had sued Dr. Benford in the past. Finally, Dr.

Brad Franklin extracted the two painful teeth for the plaintiff on October 26, 2004.

The plaintiff alleges that Dr. John Bearry, the director of medical services provided to Mississippi Department of Corrections inmates, and Dr. George Benford, a dentist for the Department of Corrections, acted to deny him medical treatment for two painful teeth. It is undisputed that forty days elapsed between the plaintiff's request for treatment and the extraction of the two teeth. It is also undisputed that the plaintiff had sued the defendants previously – and that at least part of the delay in treatment arose out of the defendants' thoughts about the previous suit. The defendants claim that they believed an order in the previous case enjoined Dr. Benford from treating the plaintiff – and that the delay in treatment arose from the time required to send the plaintiff to another dentist. The plaintiff has not alleged medical malpractice regarding the removal of his painful teeth; instead, he claims that the two defendants caused him to suffer severe dental pain for over a month by delaying his treatment – and did so in retaliation for the plaintiff's previous suit against Dr. Benford.

## Claims Against Dr. Benford

The defendants claim that Dr. Benford believed that he was bound not to treat the plaintiff by an injunction issued during the plaintiff's previous litigation. As proof, Dr. Benford has filed an affidavit setting forth this understanding. Thus, the defendants argue, the plaintiff cannot prove that Dr. Benford acted with deliberate indifference to the plaintiff's serious medical needs, the standard for prisoner claims of denial of medical care. *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The defendants argue further that should the court adopt the Report and Recommendation, it would permit the plaintiff to "oppose summary judgment[] by the use of unsworn materials."

*Barker v. Norman*, 651 F.2d 1107 (5th Cir. 1981), *citing Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980). The problem with this argument is that the plaintiff's pleadings and submissions to the court were given under penalty of perjury, meaning that the materials *are* sworn – regarding facts known to the plaintiff. For the purposes of summary judgment, the court must give such evidence presented by each side equal weight. The plaintiff's case *does* currently rely, in part, on hearsay statements he attributes to a nurse stationed at the Mississippi Department of Corrections facility where he was housed during the time of his dental problems in 2004. The court shall address the effect of that hearsay below.

### Claims Against Dr. Bearry

The defendants argue that Dr. Bearry cannot be held liable in this case because he is a medical doctor, not a dentist, and thus could not personally have performed the tooth extractions for the plaintiff. This argument is unpersuasive. The plaintiff seeks redress from Dr. Bearry not in his role as a medical caregiver, but as the Medical Director for the Mississippi Department of Corrections at Parchman, who, according to the affidavit provided by Dr. Bearry himself, "oversee[s] the daily operations of the prison medical system." The only salient fact set forth in Dr. Bearry's affidavit, other than his name and position within the prison system, is that he "ha[s] never treated Elster Joseph Ponthieux for dental problems." That statement is both unsurprising (because Dr. Bearry is not a dentist) and irrelevant to the plaintiff's claims. The plaintiff has not sued Dr. Bearry for failing – personally – to extract the plaintiff's teeth. The plaintiff claims that Dr. Bearry knew of the plaintiff's pain and suffering and failed – in his capacity as Medical Director – to ensure that the plaintiff received prompt treatment to relieve that pain and suffering. The plaintiff's claim against Dr. Bearry is not grounded in a *respondeat superior* theory. Rather,

the plaintiff alleges that he appealed to Dr. Bearry directly and that Bearry failed to expedite the plaintiff's visit to a dentist willing to treat him. While the medical director does not normally dictate the precise course of treatment for a given inmate, once alerted to the problem, certainly he can ensure that an inmate in tremendous pain receives *some* form of treatment in a timely fashion. As such, the plaintiff has alleged Dr. Bearry's personal involvement, and summary judgment in Dr. Bearry's favor would not be appropriate.

### The Effect of the Hearsay Statements Attributed to the Nurse at the Plaintiff's Old Unit

The defendants take umbrage with the Magistrate Judge's Report and Recommendation because many of the facts in the plaintiff's complaint are derived from statements of the nurse in the unit where the plaintiff was housed as he suffered pain from his teeth. The defendants argue that the statements of the nurse are hearsay and thus cannot be used to oppose the instant motion, citing *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. 1981). The defendants are correct in this argument, but it does not win the day, as the Fifth Circuit *reversed* the district court in *Barker* – for failing to give a *pro se* litigant an opportunity to cure the defect of hearsay testimony presented in opposition to a motion for summary judgment. *Id.* at 1129. The Fifth Circuit's holding on this issue from six decades past still rings true: "Summary judgment is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial . . . ." *Whitaker v. Coleman*, 115 F.2d 305, 307 (5th Cir. 1940). The court has not cautioned the *pro se* plaintiff in this case about the pitfalls and serious nature of a summary judgment motion. Indeed, the Fifth Circuit held nearly forty years ago that "[s]ummary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of overkill in its use." *Brunswick*

*Corp. v. Vineberg*, 370 F.2d 605, 612 (5th Cir. 1967). Thus, in order for the court to grant the instant motion for summary judgment, it would, at a minimum, have to issue an order instructing the plaintiff in the effects of summary judgment. Then the court would be required to reopen discovery to permit the plaintiff to seek and acquire the proof he needs to rebut the evidence adduced thus far by the defendants. As discussed below, such a turn in the case would defeat the purpose of the court's local rules concerning the handling of *pro se* prisoner § 1983 cases.

### The Court's Local Rules Regarding *Pro Se* Prisoner Cases Under 42 U.S.C. § 1983

This case is proceeding on the administrative track under Rule 1.4(D) of the UNIFORM LOCAL RULES OF THE UNITED STATES DISTRICT COURTS FOR THE NORTHERN AND THE SOUTHERN DISTRICTS OF MISSISSIPPI. Administrative track cases normally have no discovery, which may only be conducted with leave of the court. UNIF. LOC. R. 1.3(D). As a case challenging the conditions of confinement at a penal institution, the local rules exempt this case from the normal scheduling requirements. UNIF. LOC. R. 16.1(D). The biggest difference between prisoner § 1983 cases and a case on the normal track is that discovery in prisoner § 1983 cases is extremely circumscribed – limited usually to a short list of administrative documents easily accessible to defendant institutions. There are normally no depositions, no interrogatories, no requests for admissions, and no experts.[1] Discovery is the most time-consuming and expensive part of litigation; as such, the restricted discovery in prisoner § 1983 cases permits them to move swiftly to conclusion – at the smallest cost to the litigants.

When conducted correctly, this special expedited track for prisoner § 1983 cases benefits

---

[1] In some cases the defense will put on a medical expert and, in even fewer cases, an expert to discuss prison policies and procedures.

everyone involved in the process. The prisoner plaintiff benefits in having his case decided much sooner than he otherwise would. The court benefits by moving its docket of prisoner cases along briskly. The defendants benefit in greatly reduced legal fees and discovery costs. The court is mindful, however, of the lurking danger in making this system so efficient that it is no longer just. The prisoner plaintiff in this case bears the burden of persuasion, but he has virtually no access to the proof he needs to carry that burden – except through discovery – which local rule and the court's standard scheduling order severely restrict. The *pro se* prisoner may request additional discovery, but with no legal training, he may not recognize the need for such discovery until the day of trial – or until he receives a motion for summary judgment. The court would not entertain a motion for additional discovery submitted at trial, but binding precedent in this circuit requires the court to do so in the context of a motion for summary judgment. This puts the court in the delicate position of creating an equitable environment for *pro se* litigants – without advocating for them. The Fifth Circuit has left determining the best way to apprise *pro se* litigants of their responsibilities regarding a motion for summary judgment to "the sound discretion of the district court." *Barker*, 651 F.2d at 1129. Before granting summary judgment in this case, the court would have to provide the plaintiff the opportunity to collect the evidence (in an admissible form) he seeks from the nurse in question. As discussed below, however, this case is not a good candidate for summary judgment because its resolution lies in determining the state of mind of the defendants during the forty-day delay between the plaintiff's request for medical care and his treatment.

**The Effect of State of Mind of Defendants**

One of the elements of a claim of deliberate indifference is that the defendant must have

known about a prisoner plaintiff's serious medical need, then have made a conscious decision not to treat it. In other words, the defendant must have chosen not to treat a seriously ailing patient. Documents in the record establish: (1) that the plaintiff's teeth caused him severe pain, (2) that the plaintiff filed a medical request form describing his condition and seeking assistance, (3) that no one tended to that serious medical need for forty days, and (4) that Dr. Benford's refusal to treat the plaintiff arose out of a past suit the plaintiff had brought against Dr. Benford. The plaintiff argues that the defendants failed to arrange his treatment in retaliation for his previous suit against Dr. Benford. The defendants argue that Dr. Benford has set forth his reason for refusing to treat the plaintiff in his affidavit.[2] Dr. Bearry has offered no evidence other than his statement that he did not treat the plaintiff.

The court now turns to the propriety of using Dr. Benford's affidavit to establish conclusively his intent when refusing to treat the plaintiff's dental needs in this case. Courts may determine some facts without a live hearing, *Amos v. Scott*, 61 F.3d 333 (5th Cir. 1995), but a live hearing is required if the credibility of a witness will be decisive in determining those facts, *United States v. Arguellas*, 78 Fed.Appx . 984 (5th Cir. 2003) (unpublished). Dr. Benford's statement of his subjective intent in an affidavit merely creates a question of fact for a jury *because a determination of Dr. Benford's intent would be based wholly on his credibility as a witness*. *Pacific Ins. Co., Ltd. v. Louisiana Auto. Dealers Assoc.*, 273 F.3d 392 (5th Cir. 2001)(summary judgment disfavored in cases turning on state of mind). A witness can write down what he claims his thoughts were at a given time, but only his demeanor on the stand will

---

[2]The reason described in the affidavit (and other papers) was Dr. Benford's belief that a previous court order enjoined him from providing the plaintiff dental treatment.

provide a finder of fact the additional information necessary to decide whether or not to believe him.

In order to establish a claim of retaliation in this case, Ponthieux must prove that he engaged in constitutionally protected activity (filing suit against the medical staff), faced a consequence (a forty-day delay in treatment), and that such action was taken "in an effort to chill [his] access to the courts or to punish [him] for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir. 1987). The relevant showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Edwards*, 51 F.3d at 580. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). The plaintiff has made all the showing he can absent a live hearing or trial because the last element can be shown only by the timing of events (for cause and effect) and by testimony (subject to a credibility determination by a jury). The timing of events lends credence to the plaintiff's allegations. Only the testimony (and credibility) of the defendants remains, and determining credibility is the province of the jury.

## Conclusion

With the case in its present posture the court cannot grant summary judgment to the defendants. Before the court could grant the motion, it would be required to hold an evidentiary hearing in which both defendants testified regarding their state of mind during the forty-day delay in the plaintiff's treatment. The nurse from whom the plaintiff sought assistance would, in all likelihood, have to testify, as well. Such a hearing could easily last as long as a trial – with no guarantee that the case would be over at hearing's end. Such a hearing is hardly a model of

judicial efficiency. The court declines to hold such a hearing because only a tiny fraction of claims in which subjective intent is an element are proper candidates for summary dismissal, and this case does not appear to be an exception to that general rule. As such, the instant motion for summary judgment shall be denied. A judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 10th day of October, 2006.

                                           **/s/ Michael P. Mills**
                                           **UNITED STATES DISTRICT JUDGE**